UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-97-FDW

| | |
|---|---|
| DAVID HURT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DANIEL A. KUEHNERT, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 11). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 6).

**I.  BACKGROUND**

*Pro se* Plaintiff, who is incarcerated at the Alexander Correctional Institution, has filed a civil rights suit pursuant to 42 U.S.C. § 1983. The Complaint was dismissed on initial review and Plaintiff was granted the opportunity to amend. (Doc. No. 10). The Amended Complaint is now before the Court on initial review.

Plaintiff names as Defendants: retired State Laboratory Molecular Geneticist David G. Spittle who conducted testing and prepared reports for Plaintiff's murder prosecution in 1999-2002;[1] State Bureau of Investigation STIMS Administrator Suzi Barker who testified at Plaintiff's resentencing hearing in 2008; Superior Court Judge Daniel A. Kuehnert who presided over Plaintiff's Motion for Appropriate Relief ("MAR") in Caldwell County court in 2018; and attorney Joseph C. Delk IV who was appointed to represent Plaintiff in the state post-conviction

---

[1] Plaintiff pled guilty in 2002 to second-degree murder in Caldwell County case number 99CR1677. He received an aggravated sentence in 2002 and was eventually resentenced to another aggravated sentence in 2008. See State v. Hurt, 235 N.C. App. 174, 760 S.E.2d 341 (2014); Fed. R. Ev. 201 (addressing judicial notice).

1

proceedings and filed an MAR on Plaintiff's behalf.

Construing the Amended Complaint liberally, Plaintiff appears to allege that false scientific evidence led to him to plead guilty to second-degree murder and resulted in the imposition of an aggravated sentence in 2002 and again upon resentencing in 2008. Plaintiff alleges that he was denied discovery during the criminal prosecution and in the state post-conviction proceedings. The discovery was "sought through the state court in accordance with state statutes and, therefore, [Plaintiff] cannot seek or obtain relief by challenging the Forensic Evidence in [his] case." (Doc. No. 11 at 2).

Plaintiff alleges that former SBI Agent Spittle deprived Plaintiff of liberty without due process by "intentionally prepar[ing] false and misleading reports regarding both blood spatter and DNA analysis…" during the murder prosecution from March 1999 through August 2002. (Doc. No. 11 at 6). The blood spatter reports "falsely asserted the presence of blood on [Plaintiff's] 'clothing' despite the fact that the blood spatter analysis does not involve any actual testing to confirm the presence of blood." (Doc. No. 11 at 6). Agent Spittle also claimed that DNA analysis was conducted and that Spittle generated DNA profiles from the blood samples submitted from the victim, co-defendant, and Plaintiff to compare those profiles against the stains found on various items of evidence. However, at the 2008 resentencing hearing, Defendant Barker testified that the co-defendant's standard was not taken for comparison purposes. If true, this would show that the claims made at both hearings about Spittle's DNA analysis was "entirely false." (Doc. No. 11 at 7). Defendant Barker also testified at the 2008 hearing about Spittle's analysis of a cigarette butt that was analyzed for saliva, however, the supposed basis for the test was not available until years after the analysis was conducted in 1999. (Doc. No. 11 at 7). Spittle also "falsely portrayed" the type of serology analysis he conducted as blood spatter "to conceal the negative results of any

2

blood analysis testing that he may have attempted to perform." (Doc. No. 11 at 7). This claim is consistent that the fact that exculpatory blood analysis allegedly conducted in 1999 was withheld and was "never referenced or released" until the resentencing proceedings in 2007-08. (Doc. No. 11 at 7).

Defendant Barker falsely claimed at the 2008 resentencing hearing that a cigarette butt found outside the crime scene was identified as containing Plaintiff's DNA profile and tested positive for the presence of blood and that the butt was cut in two pieces by a serology analyst and was submitted to two other sections of the lab for analysis. According to the limited discovery information that was provided, no actual testing was ever performed on the butt that was identified as having a limited, presumed presence of saliva, and Barker failed to disclose any information to explain why a screening test for the presence of saliva was not conducted that would have been necessary to determine whether it was suitable for DNA analysis. Barker's claims about the analysis of the butt and the presence of blood on it contradicted all previous claims and testimony about that item, including portions of two different lab reports and 2008 testimony from the agent who collected the butt from the crime scene. Barker failed to fully disclose the types of tests conducted by the serology section on various items of evidence and the results of those tests, despite having been asked to do so by the prosecutor. On information and belief, Barker made various claims alleging that items of evidence were submitted to other sections of the lab (DNA and latent evidence sections) following a positive screening test for the presence of blood. Barker testified that items were transferred or preserved for DNA analysis or transferred to the latent evidence section and were not "tested for the further test," including Plaintiff's work boots, the cigarette but that allegedly contained Plaintiff's DNA, the co-defendant's t-shirt and shoes, and multiple items taken from the crime scene. (Doc. No. 11 at 8).

Defendant Barker falsely claimed that she performed peer review of a previously undisclosed blood analysis report by former Agent Joseph S. Taub during the capital prosecution of Plaintiff's case. However, Barker's job description at that time as an entry-level analyst would not have qualified her for that duty. Defendant Barker "intentionally misled the jury" by giving unsolicited testimony about DNA analysis that Spittle allegedly conducted despite her lack of qualifications and certifications as a DNA analyst. Defendant Barker made specific claims about the type of DNA testing that was allegedly conducted whereas the prosecutor's questions only called for a yes/no answer.

With regards to the 2018 MAR proceedings, Plaintiff alleges that attorney Delk denied him access to courts because Delk is "a State actor acting in concert with the State of N.C. to continue the farce [that] Plaintiff was getting a fair hearing when in Reality it was anything but a Fair Process for Plaintiff." (Doc. No. 11 at 3). Delk gave the "appearance" of investigating Plaintiff's case but this was a sham because Delk failed to even obtain discovery upon which the whole case relied. (Doc. No. 11 at 4).

Plaintiff acknowledges that Judge Kuehnert, who denied the MAR on June 28, 2018, cannot be held liable for money damages for actions taken within his jurisdiction. (Doc. No. 11 at 9); see (Doc. No. 1 at 73) (order denying MAR). However, Plaintiff claims that Judge Kuehnert had a "clear duty" to provide Mr. Delk with "all the tools necessary to thoroughly investigate [Plaintiff's] case" including discovery, which Plaintiff has been denied for over two decades. (Doc. No. 11 at 10). Plaintiff "has not seen one page [of discovery] since his arrest" in 1999. (Doc. No. 11 at 10). No real investigation could have happened without discovery.

Plaintiff claims that he was injured by the foregoing in that he was induced to plead guilty based on evidence that "apparently does NOT exist," and resulted in the imposition of enhanced

4

sentences in 2002 and 2008. (Doc. No. 11 at 5).

Plaintiff seeks "injunctive relief in the form of ordering him a new hearing as well as ordering the State to provide him with Full Discovery in his case Pursuant to N.C.G.S. § 15A-1415,"[2] (Doc. No. 11 at 10), "Dismissal of Charges under [§ 15A-954(a)(4)][3] as a result of Flagrant violations of [his] constitutional Rights and Irreparable Prejudice to [his] case" and compensatory and punitive damages. (Doc. No. 11 at 12).

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

---

[2] Addressing Motions for Appropriate Relief.
[3] Plaintiff cites "N.C.G.S. 954" in his Amended Complaint. (Doc. No. 11 at 12). It appears that he is attempting to refer to § 15A-954(a)(4), which addresses motions to dismiss criminal pleadings: "The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that: … (4) The defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution."

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**III.    DISCUSSION**

As a preliminary matter, Plaintiff has named as Defendants two individuals against whom the Amended Complaint cannot proceed. Plaintiff names as a defendant North Carolina Superior Court Judge Kuehnert. He appears to blame Judge Kuehnert for a lack of discovery in the criminal case and in the post-conviction proceedings.[4] "[J]udges are absolutely immune from suit for a deprivation of civil rights" for actions taken within their jurisdiction. King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992). For immunity to apply, the act in question must be a "judicial act," that is, a

---

[4] It appears that Judge Kuehnert only presided over the MAR. See State v. Hurt, 359 N.C. 840, 616 S.E.2d 910 (2005); State v. Hurt, 235 N.C. App. 174, 760 S.E.2d 341 (2014); see also (Doc. No. 1 at 17).

6

"function [that is] normally performed by a judge, and [for which] the parties dealt with the judge in his or her judicial capacity." Id. A judge will not be deprived of immunity "because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Plaintiff has failed to allege that Judge Kuehnert acted in the absence of all jurisdiction and therefore the claims against him are barred by judicial immunity. The claims against Judge Kuehnert will therefore be dismissed.

Plaintiff also names as a Defendant the attorney who was appointed to represent him in a post-conviction proceeding and filed an MAR on his behalf, Joseph C. Delk IV.[5] To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). The color of law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id. at 50 (internal quotations omitted). In rare cases, the state can "so dominate[] [private] activity as to convert it to state action." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 181 (4th Cir. 2009). To satisfy the state action requirement, a plaintiff must demonstrate that the conduct at issue is "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). If the defendant is not a state actor, there must be a "sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). Conduct is fairly attributable to the state where: (1) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct

---

[5] It does not appear that Mr. Delk represented Plaintiff at the time of the prosecution, resentencing, or appeal. See State v. Hurt, 359 N.C. 840, 616 S.E.2d 910 (2005); State v. Hurt, 235 N.C. App. 174, 760 S.E.2d 341 (2014); see also (Doc. No. 1 at 17).

imposed by the State or by a person for whom the State is responsible;" and (2) where the party charged with the deprivation is a person who may "fairly be said to be a state actor." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). "Without state action, [plaintiff] has no § 1983 claim." Thomas v. Salvation Army So. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (affirming dismissal pursuant to § 1915(e)(2)(B)(ii) where plaintiff did not allege any facts that even remotely suggested that defendants' actions were attributable to the state). "Private lawyers do not act "under color of state law" merely by making use of the state's court system." Fleming v. Asbill, 42 F.3d 886, 890 (4th Cir. 1994) (quoting Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)). "[A] public defender does not act under the color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981).

Plaintiff alleges that Mr. Delk failed to obtain discovery and adequately investigate the case during the MAR proceeding and conclusively states that Delk acted "in concert with the state of N.C." However, Plaintiff alleges no facts suggesting that Delk's actions are fairly attributable to the state. Plaintiff's conclusory contention that Delk is a state actor, without any factual allegations to support that conclusion, is itself insufficient to proceed. See generally Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient). The claims against Mr. Delk will therefore be dismissed.

In addition to naming parties against whom he cannot proceed, Plaintiff's § 1983 claims are also unable to proceed. First, Plaintiff alleges that he is being denied access to the courts. Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th

8

Cir. 1978). To make out a claim of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff complains that he has been denied access to discovery at all levels of the criminal prosecution, which precluded adequate investigation of his case prevented him from challenging his challenging the forensic evidence in his case. Plaintiff's allegations are conclusory and he has failed to identify any nonfrivolous post-conviction or civil rights claim that was frustrated or impeded. He has thus failed to state a claim for denial of access to courts and, therefore, this claim will be dismissed.

Next, Plaintiff alleges that Defendant Spittle intentionally presented false evidence in the criminal proceedings between 1999 and 2002 that induced Plaintiff to plead guilty, that Defendant Barker presented false evidence upon Plaintiff's resentencing in 2008, and that exculpatory evidence conducted in 1999 was withheld until the 2007-08 resentencing. (Doc. No. 11 at 7). These claims are barred from § 1983 review.

The Court held in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by

9

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

Heck, 512 U.S. at 485.

For Heck to bar a § 1983 claim, (1) "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence," Heck, 512 U.S. at 487, and (2), the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practically sought habeas relief while in custody, Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).

Plaintiff does not allege that his state conviction has been overturned and the records available to this Court indicate the contrary. See State v. Hurt, 235 N.C. App. 174, 760 S.E.2d 341 (2014); Fed. R. Ev. 201 (addressing judicial notice); (Doc. No. 1 at 73) (order denying MAR). Plaintiff's allegations that Defendants Spittle and Barker presented false evidence in the state criminal proceedings, and that material exculpatory evidence was withheld from him, would necessarily call into question the validity of his second-degree murder conviction and aggravated sentence. See, e.g., Heck, 512 U.S. at 479, 490 (claim that prosecutors and an investigator had "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'" cannot be maintained under § 1983); Griffin v. Baltimore Police Dep't, 804 F.3d 692 (4th Cir. 2015) (claim for damages against police and prosecution for withholding evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) during a murder trial is barred by Heck); Moore v. Burge, 771 F.3d 444, 446 (7th Cir. 2014) (argument that police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations, is barred by Heck until a conviction is set aside); Wilson v. Crouch, 2007 WL 2751785, at *1 (W.D. Va. Sept.

19, 2007) (finding plaintiff's civil rights claim for monetary damages barred by Heck where plaintiff alleged that government witness fabricated testimony and that prosecutors used such perjured testimony, absent a showing that the underlying conviction had been reversed or vacated).

Further, the remedy that Plaintiff seeks with regards to these claims – dismissal of the state charges – is unavailable in this § 1983 proceeding. Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004); see Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (an application seeking release from custody is an application for habeas corpus and is not an available remedy under the Civil Rights Act). "Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement," Griffin v. Baltimore Police Dep't, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing Preiser v. Rodriguez, 411 U.S. 475, 487–90 (1973)), and "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," Muhammad, 540 U.S. at 750. Plaintiff's claim for dismissal of the state criminal charges is not cognizable under § 1983 and will be dismissed.[6]

Next, Plaintiff complains that he has been deprived of discovery in his state criminal case and the MAR proceedings. This allegation fails to raise a claim of constitutional dimension. "There is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). The Due Process Clause "has little to say regarding the amount of discovery which the parties must be afforded…." Wardius v. Oregon, 412 U.S. 470,

---

[6] Plaintiff is cautioned that § 2254 has a statute of limitations and other procedural requirements.

474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973) (rejecting due process claim of a prisoner who was convicted with the aid of surprise testimony of an accomplice who was an undercover agent whom the prosecutor had not intended to call at trial; the decision to call the witness on the day of trial was not a denial of constitutional rights). "[A]n item that the government is required to provide must not only be exculpatory but also 'material in the sense that its suppression undermines confidence in the outcome of the trial.'" United States v. LaRouche, 896 F.2d 815, 826 (4th Cir. 1990) (quoting United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985)). Plaintiff's general claim that he was denied discovery does not state a due process claim or any other constitutional claim, and therefore, it will be dismissed as frivolous and for failure to state a claim.

The crux of Plaintiff's Amended Complaint appears to be that Plaintiff is asking this Court to review the MAR proceedings, which the Court lacks jurisdiction to do. The Rooker-Feldman[7] doctrine bars lower federal courts, with the exception of habeas corpus actions, "from sit[ting] in direct review of state court decisions." Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997). The doctrine essentially precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments. See Thana v. Bd. of License Comm'rs, 827 F.3d 314, 319 (4th Cir. 2016) ("The doctrine goes no further than necessary to effectuate Congress' allocation of subject matter jurisdiction between the district courts and the Supreme Court."). Rooker-Feldman's jurisdictional bar "extends not only to constitutional claims presented to or adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment." See Jordahl, 122 F.3d at 199. The "controlling question" under the

---

[7] Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Rooker-Feldman doctrine is "whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." Jordahl, 122 F.3d at 202. The Rooker-Feldman doctrine is a "narrow" rule that the Supreme Court has applied "only twice, ... in the two cases from which the doctrine takes its name." See Skinner v. Switzer, 562 U.S. 521, 531, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). However, "[i]f a federal plaintiff 'present[s] [an] independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." Skinner, 562 U.S. at 532 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

Plaintiff names as a Defendant the judge who allegedly deprived him of discovery and an adequate hearing in the MAR proceedings, and he asks this Court to order the state to grant him a new hearing and provide him with discovery under the North Carolina post-conviction statute that governs MARs, N.C. Gen. Stat. § 15A-1415. He appears to ask this Court to insert itself into state court proceedings and substitute its judgment for that of the North Carolina court, which is precisely what the narrow Rooker-Feldman doctrine precludes. Cases finding no Rooker-Feldman impediment, by contrast, have specifically noted that the challenge is to the constitutionality of the governing state rule or statute rather than to an adverse state court decision. See, e.g., Muhammad v. Green, 633 Fed. Appx. 122 (4th Cir. 2016) (mem) (affirming the dismissal of plaintiff's § 1983 procedural due process claim on initial review as barred by Rooker-Feldman where plaintiff did not claim that the statute at issue was itself invalid; "[r]ather, he contends that the state circuit court erroneously applied the statute in deciding his case."); Wade v. Monroe Cnty. Dist. Attny, 2020 WL 639207, at *4 (3d Cir. Feb. 11, 2020) (§ 1983 claim that the state court misinterpreted the DNA statute in plaintiff's specific case, in violation of his procedural due process rights, was

13

barred by Rooker-Feldman; "[a]t its core, [plaintiff's] challenge is to the PCRA court's particular interpretation of the DNA statute and application of the statute to him, not to the statute as 'authoritatively construed' by Pennsylvania courts or as it applies to prisoner generally."); Cooper v. Ramos, 704 F.3d 772, 780-81 (9th Cir. 2012) (plaintiff's procedural due process claim that the state court "made it possible" for him to utilize the DNA statute was distinguishable from Skinner, where the claim was that the Texas statute was inadequate for any prisoner, and holding the claim to be barred by Rooker-Feldman); Alvarez v. Att'y Gen., 679 F.3d 1257, 1263-64 (11th Cir. 2012) (holding that Rooker-Feldman barred plaintiff's procedural due process claim that the state court's denial of access to DNA testing caused him injury, reasoning that it was unlike the claim in Skinner that Texas's DNA statute as "authoritatively construed" was unconstitutional). Plaintiff's claim for a new MAR hearing and discovery appears directly to seek review of the North Carolina court's application of the MAR statute *in his case* and, therefore, is barred by the Rooker-Feldman doctrine. This claim will be dismissed for lack of jurisdiction.

An exception to the Rooker-Feldman doctrine has been recognized for prisoners seeking access to biological evidence for additional DNA testing. Assuming *arguendo* that Plaintiff is attempting to state such a claim, it is insufficient to pass initial review. An individual convicted of a crime "has a liberty interest in demonstrating his innocence with new evidence under state law." District Attny's Ofc. for the Third Jud. Dist. v. Osborne, 557 U.S. 52, 68, 129 S.Ct. 3208, 174 L.2d 38 (2009). A request for DNA testing may entitle a prisoner to a cause of action under § 1983, but such an action is "severely limit[ed]" and requires the plaintiff "to show that the governing state law denies him procedural due process." Skinner, 562 U.S. at 524-25. Such claims are directed to the constitutionality of the state procedure itself, including how the governing statute is "authoritatively construed." Skinner, 562 U.S. at 532 (in finding no Rooker-Feldman bar, noting

14

that the plaintiff does not challenge the adverse state court decisions themselves; "instead, he targets as unconstitutional the Texas statute they authoritatively construed" and alleges a violation of procedural due process); LaMar v. Ebert, 681 Fed. Appx. 279, 286 (4th Cir. 2017) (finding that a § 1983 complaint alleging that the Virginia DNA statute under which he sought biological evidence for testing was unconstitutional and that prosecutor's refusal to allow testing of biological evidence contravenes due process). A state's procedures for postconviction DNA testing violate procedural due process "only if they are fundamentally inadequate to vindicate the substantive rights provided." Osborne, 557 U.S. at 69.

Construing the Amended Complaint liberally, it does not appear that Plaintiff is seeking additional DNA testing.[8] He only appears to complain that discovery has not been produced to him. Further, Plaintiff has not alleged any facts suggesting that North Carolina's postconviction DNA testing procedures violate due process. Plaintiff cites two North Carolina statutes in his Amended Complaint, neither of which addresses the right to post-conviction DNA testing, N.C. Gen. Stat. § 15A-269. Plaintiff fails to allege any defects in the post-conviction statute or in the state courts' interpretation of the statute that renders its protections fundamentally inadequate. See, e.g., Atwater v. Boone, 2019 WL 3215991, at *5 (M.D.N.C. July 17, 2019) (dismissing a § 1983 complaint alleging a violation of plaintiff's right to due process resulting from defendant District Attorney's refusal to have biological evidence tested pursuant to the North Carolina post-conviction DNA testing statute where plaintiff failed to "allege any specific defects in North Carolina courts' interpretation of the proper procedural protections of a convicted person's liberty

---

[8] Even if Plaintiff was seeking biological evidence for further DNA testing, it is unclear what Plaintiff would hope to gain from such testing. The records that Plaintiff has submitted to the Court in this action reveals that Plaintiff pled guilty to second-degree murder and, at the 2008 resentencing hearing, admitted his role in the murder, the presence of the victim's blood on his clothing, and the presence of his saliva on the cigarette butt. See (Doc. No. 1 at 66-67).

interests implicated by the state's post-conviction DNA statute – either in the context of guilty pleas, or otherwise."); Worrell v. Wayne Cnty. Dist. Attny's Office, 2012 WL 10938955 (E.D.N.C. Dec. 6, 2012) (dismissing § 1983 complaint as frivolous on initial review because he failed to allege facts to establish that § 15A-269 or the post-conviction process was inadequate to vindicate the substantive rights), *aff'd* 521 Fed. Appx. 267 (4th Cir. 2013). Plaintiff has also failed to name the District Attorney as a defendant in this action, which further suggests that it is not access to additional DNA testing that Plaintiff truly seeks. As such, Plaintiff has failed to state a plausible procedural due process claim and, to the extent he attempts to set forth such a claim, it will be dismissed.

## IV.  CONCLUSION

For the reasons stated herein, the Amended Complaint is frivolous, fails to state a claim upon which relief can be granted, and presents a claim over which this Court lacks jurisdiction. It is therefore dismissed and the Clerk will be instructed to close this case.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint, (Doc. No. 11), is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) and for lack of jurisdiction.

2. The Clerk is directed to close this case.

Signed: April 13, 2020

_____
Frank D. Whitney
Chief United States District Judge